■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent,. v. JULIO FIGUEROA, Appellant.— Judgment rendered February 24, 1971 resentencing defendant *nunc pro tunc* as of April 2, 1964, to 20 years to life, upon a plea of guilty to the crime of murder in the second degree, affirmed. This defendant set fire to the door of an apartment in which he erroneously believed his estranged girl friend resided. The fact that the flames spread rapidly and four children perished does not establish that he was mentally unbalanced. The defendant planned carefully a retaliatory act against his friend because she left him. That the consequences were far more tragic than anticipated is merely evidence of a failure to consider all possibilities and does not establish mental incompetency. Defendant was committed to Bellevue Hospital Center on July 4, 1963, a few days after his indictment, for psychiatric examination. A report dated July 18 was submitted to the court. This report stated defendant was "without psychosis; personality pattern disorder with sociopathic and aggressive features." This report was not challenged by defense counsel. At the time of the commission of the crime defendant had been gainfully employed and there was nothing in his background to indicate mental incompetency. A commitment to the Reception Center for classification and a subsequent transfer to an institution at Napanoch certainly does not establish mental incompetency. At most, under the circumstances shown to exist here, it might indicate defendant was of borderline intelligence. Nor does anything in defendant's behaviour while incarcerated support a claim of insanity. The judgment is affirmed. Concur — Stevens, P. J., Markewich, Murphy and McNally, JJ.; McGivern, J., dissents in the following memorandum: Although the very horror of his deed proclaimed this defendant's mental unbalance, and although the Bellevue Hospital report somewhat equivocally treated his erratic behaviour, and although the sentencing court committed itself to a further psychiatric investigation, which apparently did not ensue, counsel for the defendant did not seek an

independent psychiatric report to controvert the legalistic conclusion of Bellevue that this defendant was "not in such a state of idiocy, imbecility or insanity to be incapable of understanding the charge, indictment, proceeding or the making of his defense." But this defendant was only 17 years of age at the time of his horrid deed. He has been in prison since May 1, 1963, and faces the possibility of a life sentence. Yet, shortly after the imposition of sentence, he was placed in a special institution for mental defectives and underwent psychiatric treatment for three years. This followed so hard on the heels of his sentencing as to now give us pause as to a troubling question: Was he actually sane either at the commission of his crime, or when he pleaded guilty? I believe, in view of the defendant's extreme youth, the plain indications he was unquestionably a disturbed adolescent, and that he was sentenced on a capital charge, that we should now remand for a hearing as to his competency to stand trial, and also his legal sanity at the time of his crime. I appreciate the inherent difficulties of such a remand, but this is not a satisfactory basis for a denial of an effort to ferret out the true facts as to this youth's mental condition, particularly at the time of the commission of the crime, in the interests of justice.